UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. KITCHEN,

    Plaintiff,

v.

                                                    Case No. 25-cv-10547
                                                    Hon. Matthew F. Leitman

WELICKI, *et al.*,

    Defendants.

_____/

**<u>ORDER (1) SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS (ECF No. 28) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF No. 27); (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 14); AND (3) DENYING PLAINTIFF'S MOTION TO CONDUCT DISCOVERY LIMITED TO THE EXHAUSTION ISSUE (ECF No. 23)</u>**

Plaintiff Michael A. Kitchen is a state prisoner currently in the custody of the Michigan Department of Corrections (the "MDOC"). On February 26, 2025, Kitchen filed a *pro se* Complaint in this Court against two MDOC employees, Corrections Officer Jaclyn Welicki and Lieutenant Marniece Brownlee. (*See* Compl. at ¶¶ 5, 6, ECF No. 1, PageID.5.) Defendants moved to dismiss Kitchen's Complaint on the ground that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (the "PLRA"). (*See* Mot., ECF No. 14.) Kitchen then moved for discovery on the issue of exhaustion. (*See* Mot. to Conduct Discovery, ECF No. 23.)

1

On October 02, 2025, the assigned Magistrate Judge issued a Report and Recommendation (the "R&R") recommending that the Court grant Defendants' motion to dismiss and deny Kitchen's motion to conduct discovery. (*See* R&R, ECF No. 27). Kitchen then filed timely objections to the R&R. (*See* Objs., ECF No. 28.) For the reasons explained below, Kitchen's objections are **SUSTAINED IN PART** and **OVERRULED IN PART**. Defendants' motion to dismiss is **GRANTED** to the extent that it seeks dismissal of Kitchen's claims against Defendant Welicki for failure to exhaust. It is **DENIED** in all other respects. Finally, Kitchen's motion to conduct discovery is **DENIED**.

**I**

Kitchen's claims arise out of an interaction that Kitchen alleges he had with Welicki on January 21, 2025. (*See* Compl. at ¶ 11, ECF No. 1, PageID.6.) Kitchen alleges that Welicki publicly accused him of "podium pimping" and that he responded by telling Welicki that he would be filing a grievance against her. (*Id.* at ¶¶ 21-36, PageID.8-10.) He says that Welicki then retaliated against him by issuing him a disciplinary ticket. (*See id.*) He alleges that on January 26, 2025, Brownlee presided over a disciplinary hearing on the ticket that Welicki issued and that at the conclusion of that hearing, Brownlee found him guilty as charged. (*See id.* at ¶¶ 38-45, PageID.10-12.)

2

In total, Kitchen brings three claims against Welicki and Brownlee. First, he alleges that Welicki retaliated against him in violation of the First Amendment when she wrote him the disciplinary ticket. (*See id.* at ¶¶ 51-56, PageID.12-14.) Second, he alleges that Brownlee retaliated against him in violation of the First Amendment when she found him guilty on the misconduct charge at his disciplinary hearing. (*See id.* at ¶¶ 57-63, PageID.15-16.) Finally, he brings what appears to be a state-law claim for defamation against Welicki. (*See id.* at ¶¶ 64-68, PageID.17-18.)[1]

On June 23, 2025, Defendants filed a motion to dismiss based on Kitchen's alleged failure to exhaust his administrative remedies – as required by the PLRA – before filing suit. (*See* Mot., ECF No. 14). In that motion, Defendants argued that "it [was] obvious from the face of the complaint that [Kitchen] did not exhaust any claims before filing this lawsuit." (*Id.*, PageID.58.) Defendants then detailed the MDOC's three-step grievance process and the deadlines associated with each step of the process. (*See id.*, PageID.60-62.) They contended that it generally takes at least one month to complete even just the first two steps of the grievance process. (*See id.*) And they argued that because Kitchen's hearing on the misconduct charge took place on January 26, 2025, "even using the February 26, 2025, date Kitchen's complaint was docketed with the Court as the date of filing, he still filed his

---

[1] Kitchen titles this claim "Ethnic Intimidation, Defamation, & Slander." (Compl., ECF No. 1, PageID.17.)

3

complaint before he [could] reasonably [have] expect[ed] the grievance process to have been completed." (*Id.*, PageID.62.)

Kitchen opposed the motion to dismiss. (*See* Resp., ECF No. 18.) In his response, he did not contend that he had in fact exhausted his administrative remedies before he filed his Complaint. (*See generally id.*) Instead, he said that he was not required to exhaust because "the MDOC's grievance policy was unavailable under the circumstances." (*Id.*, PageID.88.) More specifically, he argued that the grievance policy "does not apply to situations involving misconduct charges and disciplinary hearings." (*Id.*, PageID.90.) To support that proposition, he cited what he identified as "Paragraph F(4) of Grievance Policy PD-03.02.130" ("Paragraph F(4)") (*Id.*, PageID.91.) He said that Paragraph F(4) prohibits prisoners from "fil[ing] grievances about misconduct charges and decisions made in prisoner disciplinary hearings," and he asserted that Paragraph F(4) excused him from filing a grievance on his claims because his claims related to misconduct charges and the decision made in his disciplinary hearing. (*Id.*, PageID.91-92.)

In reply, Defendants pointed out that Kitchen was using an outdated version of the MDOC's Policy Directive on grievances and that under the current directive, Paragraph F(4) no longer controlled. (*See* Reply, ECF No. 20, PageID.107.) According to Defendants, the relevant provision of the current policy provides that

4

> [a] grievance shall be rejected by the Grievance Coordinator if:
>
> . . .
>
> 11. The prisoner is grieving a decision made in a Class II or Class III misconduct hearing, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements, timeliness of misconduct review, timeliness of hearing). Prisoners are provided an appeal process for Class II and Class III decisions pursuant to PD 03.03.105 "Prisoner Discipline." However, if the prisoner wishes to pursue a claim that retaliation is the basis for a Class II or III misconduct, they must file a grievance on the sole issue of retaliation, and it shall not be rejected as a grievance on the hearing decision.

MDOC Policy Directive 03.02.130(P)(11) ("Paragraph P(11)"). *See also, e.g.*, *Tillie v. Tighe*, No. 1:23-cv-1295, 2025 WL 2336461, at *2 (E.D. Mich. June 5, 2025) (noting the effective date of the Policy Directive as September 25, 2023).[2] Defendants argued that Paragraph P(11) required Kitchen to exhaust his claims through the usual three-step grievance process because Paragraph P(11) authorized inmates to file grievances based upon a decision in a Class II or III misconduct hearing where, like Kitchen, they claimed that the decision was made in "retaliation" for protected conduct. (*See* Reply, ECF No. 20, PageID.107.)

Kitchen thereafter filed a sur-reply in which he acknowledged that he had originally relied on an outdated version of the MDOC's grievance policies and that Paragraph P(11) was the controlling policy directive in this case. (*See* Sur-Reply,

---

[2] Defendants agree that the Policy Directive went into effect on September 25, 2023. (*See* Resp. to Sur-Reply, ECF No. 22, PageID.129-130.)

5

ECF No.21, PageID.112.) But he argued that notwithstanding Paragraph P(11), Defendants' exhaustion defense should still fail for three reasons. First, he argued that he "did file a grievance against Defendant Welicki on the issue of retaliation and use of the racial slurs," and he said that the MDOC investigator who conducted the "Step I interview or hearing" on the grievance "chose not to address" it because the investigator deemed the matter "resolved." (*Id.*, PageID.112.) He contended that "[t]he decision not to address the retaliation issue . . . or to consider it 'resolved' waives or settles the[] exhaustion argument now." (*Id.*) Second, he argued that even if the determination that his grievance was "resolved" at Step I did not waive the Defendants' exhaustion defense, that determination nonetheless freed him from having to pursue his grievance further (*i.e.*, through Steps II and III of the grievance process). In support of that argument, he cited law holding that "a grievance resolved at Step I is exhausted" because the policy "only contemplates an appeal to Step II when a prisoner is dissatisfied with the Step I response." (*Id.*, PageID.21 (cleaned up) (citing *Claybron v. Montgomery*, No. 2:21-cv-11953, 2024 WL 2953142 (E.D. Mich. Apr. 15, 2024).) Finally, he argued that Paragraph P(11) did not require him to exhaust his claim against Brownlee (that her decision upholding the disciplinary ticket Welicki had written against him was in itself retaliatory) because that paragraph "has nothing to do with the hearings decision itself." (*Id.*, PageID.114.)

6

One week after filing his sur-reply, Kitchen filed a motion to conduct discovery limited to the exhaustion issue. (*See* Mot. to Conduct Discovery, ECF No. 23.)

On October 2, 2025, the assigned Magistrate Judge issued her R&R, recommending that Defendants' motion to dismiss be granted, Kitchen's motion to conduct discovery be denied, and the case be dismissed without prejudice. (*See* R&R, ECF No. 27, PageID.160.)  The Magistrate Judge agreed with the Defendants that Kitchen had failed to exhaust his claims and that Paragraph P(11) did not excuse him from his exhaustion obligations. (*See id.*, PageID.165-170.)  The Magistrate Judge also denied Kitchen's motion to conduct discovery on the exhaustion issue "because [discovery would] not show that Kitchen has exhausted a grievance." (*Id.*, PageID.170.)

On October 21, 2025, Kitchen filed Objections to the R&R. (*See* Objs., ECF No. 28.)  The Court will discuss Kitchen's specific objections in detail below.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

7

### III

Kitchen raises five objections to the R&R. The Court addresses them separately below. For the reasons explained below, the Court concludes that Kitchen is entitled to relief on one of his objections.

### A

Before turning to Kitchen's specific objections, the Court begins with the background rules concerning exhaustion. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). One circumstance where an administrative remedy is unavailable, and thus incapable of providing relief, is when "[a]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—*i.e.*, some mechanism exists to provide relief, but no ordinary prisoner can navigate it." *Id.* at 643–44. In such cases, "the inmate should err on the side of exhaustion." *Id.* But if the process is "essentially 'unknowable,'" then "exhaustion is not required." *Id.* (citation omitted).

8

**B**

In his first objection, Kitchen asserts that, contrary to the Defendants' contention, he could not have filed a retaliation-based grievance against hearing officer Brownlee under Paragraph P(11). (*See* Objs., ECF No. 28, PageID.175.) In support of this objection, he highlights the statement in Paragraph P(11) that a grievance shall be rejected if "[t]he prisoner is grieving a decision made in a Class II or Class II misconduct hearing." (*Id.*, PageID.176.) And he says that that provision of Paragraph P(11) would have led to the rejection of any grievance against Brownlee because such a grievance would have been based upon the decision she made at his misconduct hearing (*i.e.*, to uphold the misconduct ticket written by Welicki). (*See id.*) He contends that since his grievance against Brownlee would have been rejected, there was no "available" administrative remedy for him to exhaust against her. (*See id.*) And he therefore concludes that he did not fail to exhaust his administrative remedies against Brownlee. (*See id.*)

As noted above, Defendants counter that other language in Paragraph P(11) did permit Kitchen to file a grievance against Brownlee based upon his claim that her decision in his misconduct hearing was retaliatory. (*See* Reply, ECF No. 20, PageID.107.) Defendants point to this sentence in Paragraph P(11): "However, if the prisoner wishes to pursue a claim that retaliation is the basis for a Class II or III misconduct, they must file a grievance on the sole issue of retaliation, and it shall

9

not be rejected as a grievance on the hearing decision." (*Id.*) They say that this language makes clear that Kitchen could have filed a retaliation-based grievance against Brownlee based upon her decision at his misconduct hearing. (*See id.*; *see also* Resp. to Sur-Reply, ECF No. 22, PageID.127.) And they say that his failure to do so amounts to a failure to exhaust his remedies. (*See id.*)

      The Court is not yet persuaded that Defendants are correct. The sentence on which they rely is far from a clear indication that an inmate may file a retaliation-based grievance concerning a *decision* in a Class II or Class III misconduct hearing. The first portion of the sentence focuses on one particular type of grievance that an inmate may "wish[] to pursue," and the second portion of the sentence indicates that such a grievance will not be rejected. Critically, the first portion of the sentence does not identify the allowed grievance as one based upon a *decision* in a misconduct hearing. Instead, the sentence identifies the allowed grievance as one alleging "that retaliation is the basis for a Class II or Class III *misconduct*." *Id.* (emphasis added). The reference to a "Class II or Class III misconduct" would seem to be read most naturally to refer to a Class II or III misconduct *ticket*, not a *decision* in a Class II or III misconduct *hearing*. Thus, the first portion of the sentence does not at all make clear, as Defendants contend, that an inmate may file a retaliation-based grievance based upon a *decision* in a misconduct *hearing*.

10

The Court recognizes that the second portion of the sentence does refer to decisions in misconduct hearings. But it does so in a way that only adds to the confusion. The second portion of the sentence provides that the grievances identified in the first portion of the sentence will "not be rejected as a grievance on the hearing decision." *Id.* The confusion arises from the fact that, as set forth above, the first portion of the sentence does not refer to hearing decisions at all. While one could argue that the second portion of the sentence provides context for the first portion and clarifies that the reference to "misconduct" in the first portion must mean "decision in a misconduct hearing," that context does not fully eliminate the confusion caused by the disconnect between the first and second portions of the sentence. Simply put, there is a serious question as to whether MDOC inmates could reasonably be expected to parse the language of Paragraph P(11) at that level of detail.

Indeed, the MDOC, itself, and the Office of the Michigan Attorney General, do not seem to have a clear understanding as to whether Paragraph P(11) authorizes inmates to file grievances alleging that a decision issued in a Step II or Step III misconduct hearing was retaliatory. As noted above, in this case, they contend that Paragraph P(11) does authorize the filing of such a grievance. In contrast, in another recent case in this Court, *Smith v. Madery*, they appear to have taken the exact opposite position. *See Smith v. Madery*, No. 2:23-cv-12703, 2025 WL 2315658

(E.D. Mich. July 22, 2025) (*report and recommendation adopted*, 2025 WL 2313203 (E.D. Mich. Aug. 11, 2025)).

In *Smith*, the MDOC defendants and their attorney from the Michigan Attorney General's Office acknowledged that the inmate-plaintiff claimed that a hearing officer ruled against him in a disciplinary hearing for a retaliatory reason. (*See Smith*, *supra*, Mot. for Summary Judgment, ECF No. 32, PageID.280.) They then argued that the inmate-plaintiff failed to exhaust that claim. (*See id.*, PageID.280-281.) But they did not argue – as the MDOC Defendants do in this action – that under Paragraph P(11), the inmate-plaintiff should have exhausted his retaliation claim against the hearing officer through the usual three-step grievance process. On the contrary, they cited Paragraph P(11) for the proposition that a grievance challenging a decision in misconduct hearing is "*not* grievable." (*Id.*, PageID.279; emphasis added.) And they said that the inmate-plaintiff should have exhausted his claim by appealing the adverse hearing decision against him to the next step in the grievance review process, not by filing a grievance against the hearing officer. (*See id.*, PageID.280.[3]) That the MDOC and Michigan Attorney

---

[3] The MDOC defendants in *Smith* did say that the plaintiff in that case "needed to exhaust his grievable claims against all Defendants under MDOC's three-step grievance policy." (*Smith*, *supra*, Mot. for Summary Judgment, ECF No. 32, PageID.279.) But they then proceeded to treat the particular claim against the hearing officer as a non-grievable claim that could only be exhausted by filing an appeal of the hearing officer's decision. (*See id.*, PageID.280-281.)

12

General have taken inconsistent positions with respect to the operation of Paragraph P(11) underscores the confusing nature of the language in that paragraph.

The bottom line is this: the Court regards Paragraph P(11) as ambiguous, at best, with respect to whether an inmate may file a grievance alleging that a decision in a Class II or Class III misconduct hearing was based upon retaliation. At worst, the language is impenetrable and so confusing that it could not reasonably be understood by MDOC inmates. If the language is merely ambiguous, then inmates like Kitchen must "err on the side of exhaustion." *Ross*, 578 U.S. at 643–44. But if the language is so confusing as to render "essentially unknowable" whether a grievance may be filed based upon an allegedly retaliatory hearing decision, then inmates in Kitchen's position need not exhaust. *Id.*

Neither the parties nor the Magistrate Judge have yet done a detailed analysis as to whether the ambiguity in Paragraph P(11) is so severe as to render "essentially unknowable" whether, under the *Ross* standard, a grievance may be filed based upon an allegedly retaliatory hearing *decision*. The Court believes that a careful analysis of that issue is essential before a final decision is made with respect to Defendants' argument that Kitchen failed to exhaust his claim that Brownlee's decision at his misconduct hearing was based on retaliation. Accordingly, the Court will **SUSTAIN** Kitchen's objection to the R&R's recommendation that the Court dismiss

13

his claim against Brownlee for failure to exhaust, and the Court will **DENY WITHOUT PREJUDICE** the motion to dismiss the claim against Brownlee.

The Court **GRANTS** Brownlee leave to file a renewed motion to dismiss based upon failure to exhaust. In that motion, Brownlee shall address in detail the question of whether the ambiguity in Paragraph P(11) is so severe as to render "essentially unknowable" whether a grievance may be filed based upon an allegedly-retaliatory hearing decision. In addressing that issue, Brownlee would be well-advised to cite and address decisions applying the *Ross* "essentially unknowable" standard under similar circumstances. Brownlee would also be well-advised to explain how an inmate could reasonably be expected to understand and follow Paragraph P(11) given the fact that the Michigan Attorney General seems to have taken conflicting positions about application of that paragraph. Likewise, in responding to the motion, Kitchen would be well-advised to address cases applying the *Ross* standard under similar circumstances.

## C

In Kitchen's second objection, he argues that the Magistrate Judge erred when she "suggest[ed] that he did not file a grievance against Defendant Welicki on the issue of retaliation." (Objs., ECF No. 28, PageID.177.) The Court **OVERRULES** this objection because the Magistrate Judge did not suggest that Kitchen never filed a grievance against Welicki. On the contrary, she noted that he did so and explained

14

why that grievance was insufficient to exhaust his claim against Welicki. (*See* R&R, ECF No. 27, PageID.169-170.)

**D**

In Kitchen's third objection, he contends that the Magistrate Judge erred when she concluded that he had failed to exhaust his claims against Welicki before filing suit. (*See* Objs., ECF No. 28, PageID.179.) Kitchen claims that he did exhaust his claims against Welicki before he filed his Complaint because (1) he filed a grievance against Welicki, (2) the MDOC hearing officer who investigated the grievance deemed the retaliation issue "resolved" at Step I, and (3) the decision to deem the retaliation issue "resolved" was made before he filed his Complaint. (*See id.*, PageID.179-180.) In support of this argument, Kitchen cites decisions holding that "[a] grievance resolved at Step I is exhausted because MDOC PD-03.02.130 [the grievance policy] only contemplates an appeal to Step II when a prisoner is dissatisfied with the Step I response." (*Id.* (quoting *McClaine-Bey v. Bury*, No. 2:20-cv-162, 2022 WL 508839, at *15 (W.D. Mich., Jan. 18, 2022)).)

Kitchen's argument fails because evidence that he submitted conclusively shows that he was dissatisfied with the Step I response to his grievance against Welicki. Indeed, he filed a Step II appeal after the hearing officer treated the retaliation issue as resolved at Step I (*see* Grievance Forms, ECF No. 28, PageID.193-198), and he began his Step II appeal by proclaiming that the Step I

15

determination was an "[u]nsatisfactory response." (*Id.*, PageID.196.) And he refused to sign the Step I documentation wherein the hearing officer deemed the retaliation issue "resolved." (*See id.*, PageID.194.) Then, in his Step III appeal, Kitchen said, "Unsatisfactory response. I reiterate claims made in grievance" (*Id.*, PageID.196) – which included his allegation that Welicki's actions "clearly appeared an intent to retaliate against me." (*Id.*, PageID.194.) Under these circumstances, it is clear that Kitchen *was* "dissatisfied with the Step I response" to his retaliation allegation, *McClaine*, No. 2:20-cv-162, 2022 WL 508839, at *3, and that that allegation was thus not resolved at Step I. The Court therefore rejects Kitchen's argument that he exhausted his remedies with respect to his retaliation claim against Welicki.[4]

For all of these reasons, Kitchen's third objection is **OVERRULED**.

### E

In Kitchen's fourth objection, he complains that the Magistrate Judge misstated his argument as to why his claim against Welicki should not be dismissed for

---

[4] As noted above, Kitchen did proceed to Step III of the grievance process, but he did not complete the appeal process before filing this action. Thus, the completion of the appeal process did not timely exhaust his remedies. *See Mattox v. Edelman*, 851 F.3d 583, 594 (6th Cir. 2017) ("This court has held that a prisoner 'may not exhaust administrative remedies during the pendency of the federal suit.'") (quoting *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)); *Johnson v. Burt*, No. 21-2878, 2023 WL 2125744, at *2 (6th Cir. Feb. 15, 2023) ("Exhaustion may not be completed after filing a complaint.").

16

failure to exhaust. (*See* Objs., ECF No. 28, PageID.180.) He says that the Magistrate Judge erroneously wrote that "Kitchen's defense [was] that he did not know retaliatory misconduct tickets were grievable." (*Id.*) He insists that his defense was, instead, that he had, in fact, filed a grievance against Welicki and had exhausted his remedies in connection with that grievance before he filed suit. (*Id.*)

This objection is **OVERRULED**. For the reasons explained above, Kitchen did not exhaust his claims against Welicki before filing suit. Thus, he is not entitled to relief based upon his contention that the Magistrate Judge did not address his argument that he had exhausted the claims.

F

Kitchen finally objects to the Magistrate Judge's conclusion that he should not be entitled to take discovery in connection with the exhaustion issues. The Court **OVERRULES** this objection. Kitchen has failed to persuade the Court that discovery could prove that he did exhaust his claim against Welicki before filing his Complaint. Discovery is likewise immaterial to whether he was excused from exhausting his claim against Brownlee. That is a purely legal question that will be resolved by applying the *Ross* framework to the language of Paragraph P(11). The Court sees no basis for allowing Kitchen to conduct discovery.

## IV

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

- Kitchen's objections (ECF No. 28) are **SUSTAINED** in part and **OVERRULED** in part.

- Defendants' Motion to Dismiss (ECF No. 14) is **GRANTED** insofar as it asks the Court to dismiss Kitchen's claims against Defendant Welicki for failure to exhaust. It is **DENIED** in all other respects. Kitchen's First Amendment claims against Defendant Welicki are **DISMISSED WITHOUT PREJUDICE**.

- Defendant Brownlee may file a renewed motion to dismiss addressing in detail the concerns the Court raised about the clarity of Paragraph P(11).

- Kitchen's motion for discovery limited to the question of exhaustion (ECF No. 23) is **DENIED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman<br>
MATTHEW F. LEITMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: February 4, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 4, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan<br>
Case Manager<br>
(313) 234-5126