UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. KITCHEN,

Plaintiff,

v.

Case No. 25-cv-10547
Hon. Matthew F. Leitman

WELICKI, *et al.*,

Defendants.

______________________________________________________________/

**ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 39) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF No. 37); (2) ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION; (3) GRANTING DEFENDANTS' MOTION TO DISMISS ON EXHAUSTION (ECF No. 33); (4) DISMISSING PLAINTIFF'S CLAIM AGAINST DEFENDANT BROWNLEE WITHOUT PREJUDICE FOR FAILURE TO EXHAUST; AND (5) DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND REINSTATE DEFENDANT WELICKI (ECF No. 31)**

Plaintiff Michael A. Kitchen is a state prisoner currently in the custody of the Michigan Department of Corrections (the "MDOC"). On February 26, 2025, Kitchen filed a *pro se* Complaint in this Court against two MDOC employees, Corrections Officer Jaclyn Welicki and Lieutenant Marniece Brownlee. (*See* Compl. at ¶¶ 5, 6, ECF No. 1, PageID.5.) On June 23, 2025, Defendants moved to dismiss Kitchen's Complaint on the ground that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (the "PLRA"). (*See* Mot., ECF No. 14.) The Court granted the motion with respect to

Kitchen's claim against Welicki and denied the motion without prejudice as to his claim against Brownlee. (*See* Order, ECF No. 29.) The Court further granted Brownlee leave to file a renewed motion to dismiss for failure to exhaust. (*See id.*) Brownlee has now filed such a renewed motion. (*See* Mot., ECF No. 33.) And Kitchen has filed a motion for leave to file an Amended Complaint adding back in his claims against Welicki. (*See* Mot., ECF No. 31.)

On May 11, 2026, the assigned Magistrate Judge issued a Report and Recommendation in which she recommended that the Court (1) grant Brownlee's renewed motion to dismiss for failure to exhaust; and (2) deny Kitchen's motion to file an Amended Complaint. (*See* Report and Recommendation, ECF No. 37.) Kitchen has now filed timely objections to the Magistrate Judge's recommendations. (*See* Objs., ECF No. 39.) For the reasons explained below, Kitchen's objections are **OVERRULED**. The Court therefore **GRANTS** Brownlee's motion to dismiss and **DENIES** Kitchen's motion for leave to amend.

**I**

The Court recites below the factual background and procedural history related to Kitchen's claim against Brownlee and the legal rules regarding a prisoner's obligation to exhaust his administrative remedies. The Court sets forth this background in more detail than usual because it provides important context for the issues currently before the Court.

**A**

The Court begins with a brief discussion of the law concerning an inmate-plaintiff's obligation to exhaust his administrative remedies.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner satisfies the exhaustion requirement "by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The MDOC has established a formal multi-step grievance process. *See* MDOC Policy Directive 03.02.130. "Under the MDOC's three-step grievance procedure, the prisoner must file a Step I grievance with the facility's designated Step I grievance coordinator, then the prisoner may file a Step II grievance appeal with the facility's designated Step II grievance coordinator, and then the prisoner

may file a Step III grievance appeal with the Office of Legal Affairs (OLA)." *Ali v. Simmons*, No. 21-1829, 2023 WL 4085758, at *2 (6th Cir. Apr. 4, 2023).

A Michigan inmate must ordinarily complete the MDOC's grievance process unless that process is not available to him. As the Supreme Court has explained, while an inmate "must exhaust available remedies, [he] need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). One circumstance in which an administrative remedy is unavailable, and thus incapable of providing relief, is when "[a]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—*i.e.*, some mechanism exists to provide relief, but no ordinary prisoner can navigate it." *Id.* at 643–44. Where an inmate has some uncertainty as to whether an ambiguous scheme requires exhaustion, "the inmate should err on the side of exhaustion." *Id.* But if the process is "essentially 'unknowable,'" then "exhaustion is not required." *Id.* (citation omitted).

**B**

With this legal background in mind, the Court turns to the facts and history of this action. Kitchen's claims arise out of an interaction that Kitchen alleges he had with Welicki on January 21, 2025. (*See* Compl. at ¶ 11, ECF No. 1, PageID.6.) Kitchen alleges that Welicki publicly accused him of "podium pimping" and that he responded by telling Welicki that he would be filing a grievance against her. (*Id.* at ¶¶ 21-36, PageID.8-10.) He says that Welicki then retaliated against him by issuing

him a disciplinary ticket. (*See id.*) In that disciplinary ticket, Welicki accused Kitchen of disobeying a direct order, a Class II misconduct violation. (*See id*. at ¶ 36, PageID.10.) Welicki wrote in the ticket that Kitchen had refused her order to stop leaning on a podium and to walk away from the podium. (*See id*.)

According to Kitchen, on January 26, 2025, Brownlee presided over a disciplinary hearing on the ticket that Welicki had issued. (*See id.* at ¶¶ 38-45, PageID.10-12.) Brownlee found Kitchen guilty as charged. (*See id*.) Kitchen asserts that Brownlee ruled against him because she shared Welicki's "intent" to "retaliate" against him for reporting Welicki. (*Id*. at ¶¶ 60-61, PageID.15.)

On January 30, 2025, Kitchen appealed Brownlee's finding of guilt. (*See id.* at ¶ 46, PageID.12.) Kitchen did not claim in his appeal that Brownlee retaliated against him in any way or that her decision was driven by an intent to retaliate. Instead, he explained the basis of his appeal from Brownlee's decision as follows:

> The surveillance footage does show me leaving the podium and going to Franklin-B dayroom. Welicki and the hearings officer claim[] that I didn't immediately leave the podium after the order was given. However, neither Welicki nor the hearings officer provide any evidence stating the amount of time that elapsed between the time that the order was given and when I actually left. The lack of this evidence makes it impossible to determine whether I disobeyed the order. So the charges should be dismissed.
>
> The ticket is false and written only because I said that I was filing a grievance over Welicki's use of racial slurs towards me. In fact, after I said that I was filing a grievance, Welicki said that she was filing her paperwork.

> The hearings officer failed to investigate or have someone investigate my defense, or review video footage before her decision, violating due process. THE FINDING OF GUILTY SHOULD BE REVERSED AND THE CHARGES DISMISSED.

(Appeal Decision, ECF No. 35, PageID.325.)

Brownlee's guilty finding was affirmed on appeal on February 6, 2025. (*See* Compl. at ¶¶ 46, ECF No.1, PageID.12.) The appeal response read as follows:

> Prisoner was given sufficient written notice of the purpose of the hearing and given time to prepare and respond, he was present at the hearing and allowed to speak on his own behalf.
>
> The hearing was conducted pursuant to MDOC Policy, Procedure and Adm. Rule. The Hearings Officer's findings are supported by the evidence. I Find no Due Process violations.

(Appeal Decision, ECF No. 35, PageID.325.)

In addition to the fact that Kitchen did not mention retaliation by Brownlee in his appeal of Brownlee's guilty finding, he never filed a grievance against Brownlee alleging that her guilty finding was the product of retaliation. As described in more detail below, Kitchen insists that he could not have filed such a grievance because "the MDOC's grievance process does not apply to situations involving misconduct charges and disciplinary hearings." (Resp., ECF No. 18, PageID.90.) In sum, Kitchen never made any complaint of any kind within the MDOC grievance procedure alleging that Brownlee retaliated against him.

**C**

On February 26, 2025, Kitchen filed his Complaint in this action against Welicki and Brownlee. (*See* Compl., ECF No. 1.) Kitchen brought three claims. First, he alleged that Welicki retaliated against him in violation of the First Amendment when she wrote him the disciplinary ticket. (*See id.* at ¶¶ 51-56, PageID.12-14.) Second, he alleged that Brownlee retaliated against him in violation of the First Amendment when she found him guilty on the misconduct charge at his disciplinary hearing. (*See id.* at ¶¶ 57-63, PageID.15-16.) Finally, he brought what appeared to be a state-law claim for defamation against Welicki. (*See id.* at ¶¶ 64-68, PageID.17-18.)[1]

On June 23, 2025, Defendants filed a motion to dismiss for failure to exhaust. (*See* Mot., ECF No. 14.) In that motion, Defendants argued the Court should dismiss Kitchen's claims because he did not pursue them through all three steps of the MDOC's grievance process before filing suit in federal court. (*See id.*, PageID.58.)

Kitchen opposed the motion to dismiss. (*See* Resp., ECF No. 18.) He acknowledged that MDOC inmates are generally required to pursue most claims through the three-step grievance process. (*See id.*) But he argued that he was not required to exhaust his claim against either Defendant because one of the MDOC's

---

[1] Kitchen titled this claim "Ethnic Intimidation, Defamation, & Slander." (Compl., ECF No. 1, PageID.17.)

policies – Paragraph F(4) of Grievance Policy PD-03.02.130 – prohibited the filing of grievances arising out of "misconduct charges and decisions made in disciplinary hearings." (*Id*., PageID.91.)

Defendants then filed a reply in further support of their motion. (*See* Reply, ECF No. 20.) In that reply, Defendants argued that Kitchen cited the wrong provision of the MDOC's grievance policies. (*See id*., PageID.107.) The Defendants clarified that "it is PD 03.02.130 ¶ P[11]—not ¶ F—that sets forth the reasons for rejecting a grievance." (*Id*.) And Defendants argued that Paragraph P(11) did not prohibit Kitchen from filing a grievance against either Defendant. (*See id*.) Paragraph P(11) provides:

> A grievance shall be rejected by the Grievance Coordinator if:
>
> . . .
>
> 11. The prisoner is grieving a decision made in a Class II or Class III misconduct hearing, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements, timeliness of misconduct review, timeliness of hearing). Prisoners are provided an appeal process for Class II and Class III decisions pursuant to PD 03.03.105 "Prisoner Discipline." However, if the prisoner wishes to pursue a claim that retaliation is the basis for a Class II or III misconduct, they must file a grievance on the sole issue of retaliation, and it shall not be rejected as a grievance on the hearing decision.

MDOC Policy Directive 03.02.130(P)(11) ("Paragraph P(11)"). Defendants argued that under Paragraph P(11), Kitchen was able to file a grievance against either

Defendant because the Paragraph *does* permit the filing of a grievance on a hearing decision when the basis for the grievance is "the sole issue of retaliation." (*Id.*)

Kitchen next filed a sur-reply brief. (*See* Sur-reply, ECF No. 21.) In that sur-reply, he acknowledged that the provision of the grievance policy he originally cited – Paragraph F(4) of Grievance Policy PD-03.02.130 – did not apply, and he agreed with Defendants that applicable policy provision was Paragraph P(11). But he disagreed with Defendants' application of Paragraph P(11). First (and as relevant to the motion now before the Court), he insisted that Paragraph P(11) did in fact bar him from filing a grievance against Brownlee based upon her hearing decision because that paragraph precluded the filing of a grievance based upon such a decision. (*See id.*, PageID.114-115.) He argued that the grievance process was thus unavailable as to his claim against Brownlee, and he was therefore not required to go through the process in order to exhaust the claim. (*See id.*) Second, he argued that he should be deemed to have exhausted his claim against Welicki. (*See id.*, PageID.113.)

On October 2, 2025, the assigned Magistrate Judge issued a Report and Recommendation in which she recommended that the Court dismiss all of Kitchen's claims for failure to exhaust (the "First R&R"). (*See* First R&R, ECF No. 27, PageID.160.) The Magistrate Judge concluded that Kitchen was required to exhaust his claims against both Defendants and that he had failed to do so. (*See id.*)

Kitchen thereafter filed timely objections to the First R&R. (*See* Objs., ECF No. 28.) In those objections, Kitchen argued that (1) he had exhausted his claims against Welicki; and (2) in light of Paragraph P(11), he could not have filed a grievance against Brownlee and thus was not required to exhaust his claim against her. (*See generally id.*)

The Court overruled Kitchen's objection to the recommendation that the Court dismiss his claims against Welicki for failure to exhaust, and the Court entered an order dismissing those claims without prejudice. (*See* Order, ECF No. 29.) But the Court sustained Kitchen's objection to the recommended dismissal of his claim against Brownlee and denied without prejudice the motion to dismiss that claim. (*See id.*) The Court concluded that Paragraph P(11) – the provision of the MDOC grievance policy that, according to Defendants, required Kitchen to file a grievance against Brownlee in order to exhaust his claim against her – was ambiguous. The Court explained that ambiguity as follows:

> In his first objection, Kitchen asserts that, contrary to the Defendants' contention, he could not have filed a retaliation-based grievance against hearing officer Brownlee under Paragraph P(11). (*See* Objs., ECF No. 28, PageID.175.) In support of this objection, he highlights the statement in Paragraph P(11) that a grievance shall be rejected if "[t]he prisoner is grieving a decision made in a Class II or Class II misconduct hearing." (*Id.*, PageID.176.) And he says that that provision of Paragraph P(11) would have led to the rejection of any grievance against Brownlee because such a grievance would have been based upon the decision she made at his misconduct

hearing (*i.e.*, to uphold the misconduct ticket written by Welicki). (*See id.*) He contends that since his grievance against Brownlee would have been rejected, there was no "available" administrative remedy for him to exhaust against her. (*See id.*) And he therefore concludes that he did not fail to exhaust his administrative remedies against Brownlee. (*See id.*)

As noted above, Defendants counter that other language in Paragraph P(11) did permit Kitchen to file a grievance against Brownlee based upon his claim that her decision in his misconduct hearing was retaliatory. (*See* Reply, ECF No. 20, PageID.107.) Defendants point to this sentence in Paragraph P(11): "However, if the prisoner wishes to pursue a claim that retaliation is the basis for a Class II or III misconduct, they must file a grievance on the sole issue of retaliation, and it shall not be rejected as a grievance on the hearing decision." (*Id.*) They say that this language makes clear that Kitchen could have filed a retaliation-based grievance against Brownlee based upon her decision at his misconduct hearing. (*See id.*; *see also* Resp. to Sur-Reply, ECF No. 22, PageID.127.) And they say that his failure to do so amounts to a failure to exhaust his remedies. (*See id.*)

The Court is not yet persuaded that Defendants are correct. The sentence on which they rely is far from a clear indication that an inmate may file a retaliation-based grievance concerning a *decision* in a Class II or Class III misconduct hearing. The first portion of the sentence focuses on one particular type of grievance that an inmate may "wish[] to pursue," and the second portion of the sentence indicates that such a grievance will not be rejected. Critically, the first portion of the sentence does not identify the allowed grievance as one based upon a *decision* in a misconduct hearing. Instead, the sentence identifies the allowed grievance as one alleging "that retaliation is the basis for a Class II or Class III *misconduct*." *Id.* (emphasis added). The reference to a "Class II or Class III misconduct" would seem to be read

most naturally to refer to a Class II or III misconduct *ticket*, not a *decision* in a Class II or III misconduct *hearing*. Thus, the first portion of the sentence does not at all make clear, as Defendants contend, that an inmate may file a retaliation-based grievance based upon a *decision* in a misconduct *hearing*.

The Court recognizes that the second portion of the sentence does refer to decisions in misconduct hearings. But it does so in a way that only adds to the confusion. The second portion of the sentence provides that the grievances identified in the first portion of the sentence will "not be rejected as a grievance on the hearing decision." *Id.* The confusion arises from the fact that, as set forth above, the first portion of the sentence does not refer to hearing decisions at all. While one could argue that the second portion of the sentence provides context for the first portion and clarifies that the reference to "misconduct" in the first portion must mean "decision in a misconduct hearing," that context does not fully eliminate the confusion caused by the disconnect between the first and second portions of the sentence. Simply put, there is a serious question as to whether MDOC inmates could reasonably be expected to parse the language of Paragraph P(11) at that level of detail.

Indeed, the MDOC, itself, and the Office of the Michigan Attorney General, do not seem to have a clear understanding as to whether Paragraph P(11) authorizes inmates to file grievances alleging that a decision issued in a Step II or Step III misconduct hearing was retaliatory. As noted above, in this case, they contend that Paragraph P(11) does authorize the filing of such a grievance. In contrast, in another recent case in this Court, *Smith v. Madery*, they appear to have taken the exact opposite position. *See Smith v. Madery*, No. 2:23-cv-12703, 2025 WL 2315658 (E.D. Mich. July 22, 2025) (*report and recommendation adopted*, 2025 WL 2313203 (E.D. Mich. Aug. 11, 2025)).

> In *Smith*, the MDOC defendants and their attorney from the Michigan Attorney General's Office acknowledged that the inmate-plaintiff claimed that a hearing officer ruled against him in a disciplinary hearing for a retaliatory reason. (*See Smith*, *supra*, Mot. for Summary Judgment, ECF No. 32, PageID.280.) They then argued that the inmate-plaintiff failed to exhaust that claim. (*See id*., PageID.280-281.) But they did not argue – as the MDOC Defendants do in this action – that under Paragraph P(11), the inmate-plaintiff should have exhausted his retaliation claim against the hearing officer through the usual three-step grievance process. On the contrary, they cited Paragraph P(11) for the proposition that a grievance challenging a decision in misconduct hearing is "*not* grievable." (*Id.*, PageID.279; emphasis added.) And they said that the inmate-plaintiff should have exhausted his claim by appealing the adverse hearing decision against him to the next step in the grievance review process, not by filing a grievance against the hearing officer. (*See id*., PageID.280.) That the MDOC and Michigan Attorney General have taken inconsistent positions with respect to the operation of Paragraph P(11) underscores the confusing nature of the language in that paragraph.
>
> The bottom line is this: the Court regards Paragraph P(11) as ambiguous, at best, with respect to whether an inmate may file a grievance alleging that a decision in a Class II or Class III misconduct hearing was based upon retaliation. At worst, the language is impenetrable and so confusing that it could not reasonably be understood by MDOC inmates. If the language is merely ambiguous, then inmates like Kitchen must "err on the side of exhaustion." *Ross*, 578 U.S. at 643–44. But if the language is so confusing as to render "essentially unknowable" whether a grievance may be filed based upon an allegedly retaliatory hearing decision, then inmates in Kitchen's position need not exhaust. *Id.*

(*Id*., PageID.212-216.; footnote omitted.)

The Court noted that "[n]either the parties nor the Magistrate Judge have yet done a detailed analysis as to whether the ambiguity in Paragraph P(11) is so severe as to render 'essentially unknowable' whether, under the *Ross* standard, a grievance may be filed based upon an allegedly retaliatory hearing *decision*." (*Id.*, PageID.216.) The Court concluded that "a careful analysis of that issue is essential before a final decision is made with respect to Defendants' argument that Kitchen failed to exhaust his claim that Brownlee's decision at his misconduct hearing was based on retaliation." (*Id.*)

The Court granted Brownlee leave to file a renewed motion to dismiss based on failure to exhaust. (*See id.*, PageID.216-17.) The Court then offered guidance as to what each party should address in their briefing on a renewed motion:

> In that motion, Brownlee shall address in detail the question of whether the ambiguity in Paragraph P(11) is so severe as to render "essentially unknowable" whether a grievance may be filed based upon an allegedly retaliatory hearing decision. In addressing that issue, Brownlee would be well advised to cite and address decisions applying the Ross "essentially unknowable" standard under similar circumstances. Brownlee would also be well-advised to explain how an inmate could reasonably be expected to understand and follow Paragraph P(11) given the fact that the Michigan Attorney General seems to have taken conflicting positions about application of that paragraph. Likewise, in responding to the motion, Kitchen would be well-advised to address cases applying the Ross standard under similar circumstances.

(*Id.*, PageID.217.)

**D**

On March 5, 2026, Brownlee filed his renewed motion to dismiss, and that motion is now pending before the Court. (*See* Mot., ECF No. 33.) In that motion, she first argued that it was "evident" from "the way [Paragraph P(11)] was written" that it did not prohibit Kitchen from filing a grievance against her alleging that her hearing decision was the product of retaliation. (*Id*., PageID.281.) In Brownlee's words, Paragraph P(11) makes "clear that at least the retaliation claim [against her had to have been] brought in a grievance." (*Id*., PageID.283.) She went on to argue in the alternative that even if Paragraph P(11) is ambiguous, the standard set forth in that paragraph is not "essentially unknowable," and Kitchen therefore had to err on the side of exhaustion. *(Id.)*

Kitchen opposed the renewed motion to dismiss. (*See* Resp., ECF No. 35.) He argued that "no ordinary prisoner" could "discern or navigate" how to proceed with respect to a claim that a hearing officer issued a hearing decision that was retaliatory. (*Id.*) Kitchen also filed a separate motion seeking to amend his Complaint to reassert claims against Welicki. (*See* Mot., ECF No. 31.)

**E**

On May 11, 2025, the Magistrate Judge issued a Report and Recommendation addressing both Brownlee's renewed motion to dismiss and Kitchen's motion to amend (the "Second R&R"). (*See* Second R&R, ECF No. 37.) She recommended

that the Court grant Brownlee's motion to dismiss and deny Kitchen's motion to amend. (*See id.*)

The Magistrate Judge began by rejecting Brownlee's arguments that (1) the language in Paragraph P(11) was unambiguous; and (2) Paragraph P(11) plainly required Kitchen to pursue his retaliation claim against Brownlee through the grievance process. (*See id.*, PageID.406.) But she agreed with Brownlee that the terms of Paragraph P(11) were not "essentially unknowable" and that Kitchen was therefore obligated to "err on the side of exhaustion." (*Id.*, PageID.412.) She explained:

> Brownlee says that Kitchen is at worst presented with two potential processes to exhaust his claims under Paragraph P(11), both of which are based on reasonable interpretations of Paragraph P(11), and therefore he should have erred on the side of exhaustion. The undersigned agrees that here, there were two possible avenues for relief at the administrative level: (1) Kitchen could have attempted exhaustion of the retaliation claim against Brownlee through the grievance procedure or; (2) he could have appealed the hearing decision on the basis of retaliation.

(*Id.*) She recognized that while "a reasonable prisoner may be confused as to which avenue to pursue, [he] would not read Paragraph P(11) as excusing exhaustion altogether." (*Id.*, PageID.415.) She concluded that Kitchen's obligation to "err[] on the side of exhaustion" required him to pursue at least one of these avenues, and she determined that he could not possibly have exhausted his claim against Brownlee

because he had "not pursued exhaustion under either of the two possible remedies." (*Id*., PageID.412.) Finally, she recommended that the Court decline to reinstate Kitchen's claims against Welicki if the Court agreed with her that the claim against Brownlee should be dismissed for failure to exhaust. (*See id.*, PageID.415-16.)

On June 02, 2026, Kitchen filed objections to the Second R&R. (*See* Objs., ECF No. 39.) The Court address the objections in detail below.

**II**

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**III**

Kitchen raises four objections to the Second R&R. For the reasons explained below, the Court **OVERRULES** each of the objections.

**A**

Before turning to Kitchen's specific objections, the Court begins by noting its agreement with the Magistrate Judge's analysis. The Court shares the Magistrate Judge's view that while Paragraph P(11) is ambiguous, it is not essentially unknowable. More specifically, the Court agrees with the Magistrate Judge that the

problem with Paragraph P(11) is that it does not make clear which of two avenues for relief an inmate must pursue when he claims that a hearing decision was retaliatory.

As the Magistrate Judge correctly recognized, some aspects of the structure and language of Paragraph P(11) suggest that an inmate should present such a claim of retaliation via an appeal of the hearing decision. After all, the Paragraph begins by stating that "a grievance shall be rejected . . . if [t]he prisoner is grieving a decision made in a Class II or Class II misconduct hearing" and it says, instead, the prisoner should utilize the "appeal process." MDOC Policy Directive 03.02.130(P)(11). The substance and structure of these two first sentences imply that *any* complaint based upon a hearing decision should be presented in an appeal. On the other hand, and as the Magistrate Judge further correctly recognized, there is other language in Paragraph P(11) that perhaps suggests that if an inmate's complaint about a hearing decision is that the decision was retaliatory, then that complaint may be presented in a grievance under the standard three-step process.

But as the Magistrate Judge ultimately correctly noted, none of the language in Paragraph P(11) suggests that an inmate is free to bypass the exhaustion requirement altogether when his claim is that a hearing decision was made in a retaliatory manner. And since Kitchen failed to pursue either path to exhaust his retaliation claim against Brownlee – he neither raised that claim in his appeal from

her decision nor presented it in a grievance – that claim must be dismissed for failure to exhaust. Stated another way, Kitchen was required to "err on the side of exhaustion" by presenting his retaliation claim against Brownlee in his appeal of her decision or in a grievance, and since he failed to do so, he may not proceed on the claim in this Court.

The Court now turns below to Kitchen's specific objections.

**B**

In his first objection, Kitchen asserts that the Magistrate Judge erred when she considered arguments presented by Brownlee that Kitchen says went beyond the scope of those permitted by the Court in its earlier order authorizing Brownlee to renew her motion to dismiss. (*See* Objs., ECF No. 39, PageID.426.) More specifically, Kitchen says that under the Court's order, Brownlee was not permitted to argue, and the Magistrate Judge was not permitted to consider, whether Paragraph P(11) presented two avenues for relief and whether Kitchen's claim should be dismissed for failing to pursue either option. (*See id.*) Kitchen analogizes the Court's order to an order of remand entered by an appellate court, and he says that under the logic of the "mandate rule," neither Brownlee nor the Magistrate Judge were permitted to address matters beyond the scope of those identified in the Court's order. (*See id.*, PageID.427.) The Court **OVERRULES** this objection.

While Kitchen is right that "a limited remand 'constrains' the district court's authority to the issue or issues specifically articulated in the appellate court's order," *Monroe v. FTS USA, LLC*, 17 F.4th 664, 669 (6th Cir. 2021), it not clear that – and Kitchen has not cited any authority to support his contention that – the logic of the mandate rule applies in these circumstances. In any event, the Court does not believe that either Brownlee or the Magistrate Judge exceeded the scope of inquiry and analysis permitted by the Court's order. While the Court identified certain issues that it wanted addressed in a renewed motion to dismiss, the Court did not mean to limit the parties or the Magistrate Judge to those issues. Moreover, the arguments presented by Brownlee and addressed by the Magistrate Judge were consistent with the spirit and intent of the Court's order. Finally, even if the Magistrate Judge had erred in considering the arguments at issue (and she did not), any error would have been harmless. If, as Kitchen insists, the Magistrate Judge should have recommended denial of the motion to dismiss and if the Court had adopted that recommendation, Brownlee would have been free to raise the same arguments concerning Kitchen's failure to exhaust in a motion for summary judgment, and, therefore, one way or another, the Court would have been called upon to consider and rule upon the arguments.

For all of these reasons, Kitchen is not entitled to relief on his first objection.

**B**

In Kitchen's second objection, he challenges the Magistrate Judge's conclusion that Paragraph P(11) is ambiguous but not unknowable. For all of the reasons explained above, the Court disagrees. The Court therefore **OVERRULES** this objection.

**C**

In Kitchen's third objection, he contends that the Magistrate Judge incorrectly concluded that Paragraph P(11) provided him with two paths to relief. (*See* Objs., ECF No. 39, PageID.435.) According to Kitchen, "there is no policy, rule, or regulation that would have permitted Kitchen to utilize any process to pursue the retaliation claim." (*Id.*) For the reasons explained above, the Court agrees with the Magistrate Judge's analysis and rejects this contention by Kitchen. The Court therefore **OVERRULES** this objection.

**D**

Finally, Kitchen objects to the Magistrate Judge's recommendation to deny his motion for leave to amend the Complaint to reinstate his claims against Welicki. He says that even if his claims against Welicki were properly dismissed earlier for failure to exhaust, he should be permitted to amend his Complaint to pursue those claims now because he has since exhausted the claims through the MDOC's grievance process. More specifically, he claims to have exhausted the claims against

Welicki after he filed his original Complaint. The Court **OVERRULES** this objection.

The Magistrate Judge correctly determined that Kitchen should not be permitted to amend his Complaint to add his claim against Welicki because Kitchen's Complaint, as originally filed, did not contain any fully exhausted claims. *See Mattox v. Edelman*, 851 F.3d 583, 95 (6th Cir. 2017) (holding that "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, *provided that the plaintiff's original complaint contained at least one fully exhausted claim*.") (emphasis added). The claims against Welicki were not exhausted at the time Kitchen filed his Complaint, and, as the Court has now concluded, the claim against Brownlee also was not exhausted. Therefore, he may not now amend his Complaint to add claims against Welicki that he claims to have exhausted after filing the Complaint.

## IV

For the reasons explained above, **IT IS HEREBY ORDERED** as follows:

- Kitchen's objections (ECF No. 39) to the Second R&R are **OVERRULED**;
- The recommended disposition of the Second R&R (ECF No. 37) is **ADOPTED**;
- Brownlee's Motion to Dismiss (ECF No. 33) is **GRANTED**;

- Kitchen's claim against Brownlee is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust; and
- Kitchen's Motion to Amend the Complaint and Reinstate Defendant Welicki (ECF No. 31) is **DENIED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: September 16, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 16, 2026 by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126